UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LOS ANGELES, DEPARTMENT OF AIRPORTS,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOME ASSURANCE COMPANY,<br><br>Defendant. | Case No. 2:23-cv-05229-MCS-JPR<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS (ECF No. 17)** |

Defendant American Home Assurance Company moves to dismiss the Complaint of Plaintiff City of Los Angeles, Department of Airports, also known as Los Angeles World Airports. (Mot., ECF No. 17-1.) Plaintiff filed a timely opposition brief. (Opp'n, ECF No. 21.) Defendant filed a reply. (Reply, ECF No. 22.) The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

**I.      BACKGROUND**

This is a dispute over insurance coverage. Plaintiff is a corporation that owns and operates a number of properties insured by Defendant under a commercial property policy. (Compl. Ex. A (("Policy"), ECF No. 1.) Plaintiff's covered locations under the

Policy ("Covered Properties") experienced losses due to business interruptions during the COVID-19 pandemic, which Plaintiff attribute to the physical presence of COVID-19 on its properties and its physical loss of use of the properties due to the various government orders pertaining to COVID-19. (Compl. ¶¶ 28–62.) Plaintiff submitted a claim to Defendant invoking the Property Damage provision and the Time Element (i.e., business interruption) provisions of the Policy. (*Id.* ¶¶ 18, 20–21; *see also* Opp'n 3–4.) Defendant denied the claim. (*Id.* ¶¶ 63–66.) Plaintiff submits that the denial was wrongful and unreasonable. (*See id.* ¶¶ 63–77.)

Plaintiff brings four claims: (1) breach of contract; (2) declaratory relief; (3) breach of the implied covenant of good faith and fair dealing; and (4) unfair business practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (*Id.* ¶¶ 78–109.) Plaintiff initiated this action in state court, and Defendant removed it to this Court. (Notice of Removal, ECF No. 1.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting

2

*Twombly*, 550 U.S. at 555).

## III. DISCUSSION

### A. The Policy Precludes Coverage

Defendant argues that Plaintiff's claims fail as a matter of law because there is no coverage for Plaintiff's averred losses under the language of the Policy. (Mot. 1–2.) First, Defendant argues that the Plaintiff's alleged losses resulting from the COVID-19 pandemic are not covered under the Policy because there was no "direct physical loss or damage" to the Covered Properties. (*Id.* at 8–17.) Second, Defendant argues that the Policy's Contamination Exclusion bars coverage for losses caused by a virus. (*Id.* at 17–23.) Defendant additionally argues that Plaintiff's declaratory judgment claim (Count 2), bad faith claim (Count 3), and unfair business practices claim (Count 4) likewise fail as a matter of law. (*Id.* at 23–24.)

"[I]nterpretation of an insurance policy is a question of law." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (internal quotation marks and citation omitted). "When interpreting a policy provision, we must give terms their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Id.* (internal quotation marks and citation omitted); *see also* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."). "The terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Ent. Am., Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641 and *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993)); *see also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("The best evidence of the intent of the parties is the policy language."); *see also* Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . .").

For each of the reasons offered by Defendant, the Court determines as a matter

of law that there is no coverage for the losses Plaintiff alleges.

### 1. Direct Physical Loss or Damage

The Policy provides coverage for "direct physical loss or damage by a covered cause of loss to covered property." (Policy 60 (emphasis removed).)[1] The Policy separately provides for business interruption coverage. (*See id.* at 82–.)Both provisions of the Policy provide coverage contingent on a showing of "direct physical loss or damage" to a Covered Property.

Defendant argues that the presence of COVID-19 does not constitute "direct physical loss or damage." (Mot. 8–11.) Plaintiff responds that COVID-19 was present at the Covered Properties, physically altering them. (Opp'n 5–7.) For instance, Plaintiff argues that the virus changes the chemical composition of property surfaces, increases the roughness of surfaces, renders property more hydrophobic, and alters surfaces from safe to dangerous. (*Id.* at 6 (quoting Compl. ¶ 41).) Plaintiff separately argues that the presence of COVID-19 at the Covered Properties forced it to change the way it used them—for example, it installed touchless faucets, UV light air cleaning systems, and acrylic barriers; changed HVAC air filters; and decommissioned certain facilities to minimize daily operations and maintenance. (*Id.* at 6–7 (quoting Compl. ¶ 60).) Finally, Plaintiff argues that government orders restricted access to the Covered Properties due to the direct physical loss or damage caused by the virus. (*Id.* at 7 (citing Compl. ¶¶ 54–56).) All of these, Plaintiff argues, constituted "direct physical loss or damage" to the Covered Properties, entitling it to coverage under the Policy.(*See generally* Opp'n 8–17.)

None of Plaintiff's arguments succeed. Plaintiff's novel allegations regarding the physical impact of COVID-19 on their properties are insufficient in the face of the California Court of Appeal's observations that "the presence or potential presence of the [COVID-19] virus does not constitute direct physical damage or loss," and "cleaning

---

[1] Pinpoint citations of the Policy refer to the Page ID numbers assigned by CM/ECF.

or employing minor remediation or preventive measures to help limit the spread of the virus does not constitute direct property damage or loss." *United Talent Agency v. Vigilant Ins. Co.*, 77 Cal. App. 5th 821, 838–39 (2022).

Moreover, the Ninth Circuit has held that the inability to operate business as a result of COVID-19 government closure orders does not cause a physical alteration. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 888, 892 (9th Cir. 2021) (holding "direct physical loss of or damage to" cannot be synonymous with "loss of use" "because California courts have carefully distinguished 'intangible,' 'incorporeal,' and 'economic' losses from physical ones); *see also Protégé Rest. Partners v. Sentinel Ins. Co.*, No. 21-16814, 2022 WL 14476377, at *2 (9th Cir. Oct. 25, 2022); *Out W. Rest. Grp., Inc. v. Affiliated FM Ins. Co.*, No. 21-15585, 2022 WL 4007998, at *1 (9th Cir. Sep. 2, 2022) (holding that income losses due to government closure orders "do not inflict direct physical loss or damage to property"). The majority of California courts of appeal have reached the same conclusion. *See, e.g.*, *United Talent Agency*, 77 Cal. App. 5th at 834; *Musso & Frank Grill Co., Inc. v. Mitsui Sumitomo Ins. USA Inc.*, 77 Cal. App. 5th 753, 760 (2022) ("At this point, there is no real dispute. Under California law, a business interruption policy that covers physical loss and damages does not provide coverage for losses incurred by reason of the COVID-19 pandemic."). Plaintiff cites no authority binding on this Court that commands a different result. Accordingly, it has not plausibly alleged a cognizable "direct physical loss or damage" to "real property" or "personal property" giving rise to a covered cause of loss. Consequently, Plaintiff cannot recover under the invoked coverages.

Although not briefed in depth in the motion to dismiss, or mentioned in the opposition, Plaintiff also seeks coverage under four additional Time Element coverages–Interruption by Civil or Military Authority Coverage, Ingress & Egress Coverage, Extra Expense Coverage, and Contingent Time Element Coverage. (Compl. ¶¶ 23–27.) These coverages also require a showing of "direct physical loss or damage," which is absent here. (Policy 60, 82.) Therefore, the Plaintiff can likewise not recover

under any of these coverages.

### 2. Contamination Exclusion

Even assuming arguendo that the presence of the COVID-19 virus could constitute "direct physical loss or damage" to the Covered Properties, the Policy's Contamination Exclusion precludes coverage here. The Contamination Exclusion bars coverage for loss caused by pollutants or contaminants, defined to include any "virus" which "after its release can cause or threaten damage to human health or human welfare or causes or threatens . . . loss of use to property insured hereunder." (Policy 103–04; *see id.* at 80.) To the extent Plaintiff relies on the presence of the COVID-19 virus on its property, its own theory of recovery bars coverage. *See, e.g.*, *HT-Seattle Owner, LLC v. Am. Guar. & Liab. Ins. Co.*, No. 21-35916, 2023 WL 3562996, at *2 (9th Cir. May 19, 2023) (finding under Washington law that a contamination exclusion barred recovery on a claim for property damage allegedly caused by COVID-19); *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, 525 F. Supp. 3d 1269, 1277–78 (D. Nev. 2021) (holding that under Nevada law, a contamination exclusion barred coverage because COVID-19 was a virus within the definition of "contaminant"), *aff'd*, No. 21-15367, 2022 WL 1125663 (9th Cir. Apr. 15, 2022); *In-N-Out Burgers v. Zurich Am. Ins. Co.*, No. 22-55266, 2023 WL 2445681, at *1 (9th Cir. March 10, 2023) (reaching the same result under California law); *TP Racing LLLP v. Am. Home Assurance Co.*, No. 21-16910, 2023 WL 3750395, at *2 (9th Cir. June 1, 2023) (reaching the same result under Arizona law). The cases cited by Plaintiff do not command a different result.

The Court determines as a matter of law that the Contamination Exclusion precludes coverage for the losses Plaintiff alleges.

### B. Because There Is No Coverage, All of Plaintiff's Claims Fail

To state a claim for breach of contract, a plaintiff must allege (1) the existence of a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) breach by defendant, and (4) damages. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821

(2011). It is axiomatic that a party cannot breach an obligation the contract did not impose. Because the Policy did not oblige Defendant to cover the alleged losses, (*contra* Compl. ¶ 77), Plaintiff has not plausibly pleaded Defendant breached. The first claim is dismissed.

"California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (citing *Waller v. Truck Ins. Exch., Inc.,* 11. Cal. 4th 1, 35–36 (1995)). Because Defendant did not breach the Policy, Defendant did not breach the implied covenant of good faith and fair dealing. The third claim is dismissed.

California's UCL provides that "unfair competition . . . include[s] any unlawful, unfair, or fraudulent business act or practice an unfair, deceptive, untrue or misleading advertising. Cal. Bus. & Prof. Code § 17200. Plaintiff rests its UCL claim on Defendant's actions or omissions relating to the Policy. (Compl. ¶ 105.) Because the Court has determined that Plaintiff cannot recover under the Policy, Plaintiff cannot state a claim under the UCL. *See 10E, LLC v. Travelers Indem. Co. of Conn.,* 483 F. Supp. 3d 828, 837–38 (C.D. Cal. 2020) ("If the ordinary and popular sense of the Policy language does not support recovery on these facts, Plaintiff cannot plausibly allege that the Policy constitutes fraudulent, unfair, or unlawful conduct giving rise to UCL liability."). The fourth claim is dismissed.

Finally, because all their other claims fail, Plaintiff has no right to declaratory relief. *See Lopez v. Wells Fargo Bank, N.A.,* 727 F.App'x 425, 426 (9th Cir. 2018) (affirming dismissal of claim for declaratory relief because claimant "had no claim upon which to request relief or remedies"). The second claim is dismissed.

### C. Leave to Amend Would Be Futile

Plaintiff asks for leave to amend its pleading if the Court grants Defendant's motion. (Opp'n 25.) As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment.

Fed. R. Civ. P. 15(a); *Manzarek*, 519 F.3d at 1021. At least one California Court of Appeal has held that COVID-19's impact constituted a physical alteration by an external force, allowing an insured plaintiff to claim coverage under a business income provision in an insurance policy. *See Marina Pac. Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*, 81 Cal. App. 5th 96, 108–09 (2022). This would caution in favor of granting leave to amend if the pleading deficiencies were limited to the insufficient allegations of direct physical loss or damage.[2] But Plaintiff offers no facts it could plead or arguments it could advance to circumvent the Contamination Exclusion to the Policy. Accordingly, the Court determines that amendment would be futile. *See Disc. Elecs., Inc. v. Wesco Ins. Co.*, No. 2:21-cv-08155-SVW-MAA, 2022 WL 123114, at *7 (C.D. Cal. Jan. 10, 2022) (collecting decisions dismissing similar COVID-19 coverage cases without leave to amend and nothing that the complaint's deficiencies "result[ed] not from poor drafting or insufficient detail but from an incurably flawed legal theory").

## IV.   CONCLUSION

The motion is granted. The Complaint is dismissed with prejudice and without leave to amend. The Court directs the Clerk to enter judgment consistent with this Order and close the case.

**IT IS SO ORDERED.**

Dated: November 30, 2023

　　　　　　　　　　　　　　　　　MARK C. SCARSI
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[2] That said, *Marina Pacific* recognized that the appellate court's conclusion was "at odds with almost all (but not all) decisions considering whether business losses from the pandemic are covered," and noted that contravening conclusions by Federal Courts might be animated by "significantly different" pleading rules. 81 Cal. App. 5th at 109.